UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITAROSE CAPILI,<br><br>     Plaintiff,<br><br>v.<br><br>THE FINISH LINE, INC., et al.,<br><br>     Defendants. | Case No.  15-cv-01158-HSG<br><br>**ORDER DENYING MOTION TO COMPEL BINDING ARBITRATION**<br><br>Re: Dkt. No. 18 |

On May 15, 2015, Defendant The Finish Line, Inc. ("Finish Line")—an athletic shoe and apparel retailer—moved to compel binding arbitration of the workplace discrimination claims of former sales associate Ritarose Capili.  Dkt. No. 18 ("Mot.").  Both parties agree that: (1) Capili agreed to abide by Finish Line's Employee Dispute Resolution Plan (the "Arbitration Agreement") at the outset of her employment; (2) Capili could not have worked for Finish Line without consenting to the Arbitration Agreement; and (3) that the claims at issue in this case fall under the scope of the Arbitration Agreement.  Capili seeks to avoid arbitration on the ground that the Arbitration Agreement is an unenforceable contract of adhesion that is both procedurally and substantively unconscionable.  *See* Dkt. No. 26 ("Opp.").

The Court has considered the arguments made by the parties in their submissions to the Court and at oral argument and, for the reasons discussed below, **DENIES** Finish Line's motion to compel binding arbitration.

## I. BACKGROUND

Capili worked as a sales associate at Finish Line's store in Daly City, California from June 26, 2010 through March 2012, Dkt. No. 1-2 (the "First Amended Complaint" or "FAC") ¶ 9, and then again from late August 2013 through July 8, 2014, *id*. ¶¶ 10 and 16.  The present lawsuit only concerns Capili's second period of employment at Finish Line, where she alleges that she was

1    terminated in response to her need for a leave of absence related to her pregnancy and other

2    medical and health conditions.  *Id*. ¶ 13.

3           On August 13, 2013, Capili submitted an application that included an agreement to

4    arbitrate any future employment-related disputes with Finish Line.  *See* Dkt. No. 20-2 at 3.

5    Capili's consent to the arbitration provision, which incorporated "The Finish Line, Inc. Employee

6    Dispute Resolution Plan" by reference, was a condition for her application to be considered by

7    Finish Line.  Mot. at 2.  Finish Line extended an offer of employment to Capili on August 26,

8    2013 and sent her an email with a link to her new hire packet.  *Id*. at 3.  That same day, Capili used

9    Finish Line's website to log in and complete that paperwork, which included her agreement to

10   abide by "The Finish Line, Inc. Employee Dispute Resolution Plan."  *Id*.  Capili's agreement to

11   that plan was a condition of her employment with Finish Line.  *Id*.

12   **II.    LEGAL STANDARD**

13          The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* sets forth a policy favoring

14   arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable,

15   and enforceable."  9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*

16   460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration).  The FAA allows that "a party

17   aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written

18   agreement for arbitration may petition any United States district court . . . for an order directing

19   that . . . arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Federal

20   policy is "simply to ensure the enforceability, according to their terms, of private agreements to

21   arbitrate."  *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468,

22   476 (1989).  Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . .

23   . in favor of arbitration."  *Id.*

24          Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such

25   grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In analyzing

26   whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses,

27   such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements

28   without contravening § 2."  *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996).  In

United States District Court
Northern District of California

1    interpreting the validity and scope of an arbitration agreement, the courts apply state law

2    principles of contract formation and interpretation.  *See Wolsey, Ltd. v. Foodmaker, Inc.,* 144 F.3d

3    1205, 1210 (9th Cir. 1998) (citation omitted).

4         When considering a motion to compel arbitration, the court is limited to determining (1)

5    whether a valid arbitration agreement exists, and, if so (2) whether the arbitration agreement

6    encompasses the dispute at issue.  *Cox v. Ocean View Hotel Corp.,* 533 F.3d 1114, 1119 (9th Cir.

7    2008).  If these conditions are satisfied, the court must compel arbitration.  9 U.S.C. § 4; *Dean*

8    *Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place

9    for the exercise of discretion by a district court, but instead mandates that district courts shall

10   direct the parties to proceed to arbitration.").

## III.   DISCUSSION

12        Capili argues that the Arbitration Agreement is both procedurally and substantively

13   unconscionable and should be found unenforceable.  Finish Line disputes that the Arbitration

14   Agreement is procedurally unconscionable, but does not appear to contest that several of the

15   provisions are substantively unconscionable.  Instead, Finish Line argues that many of the

16   potentially unconscionable provisions are "moot" because it has offered to waive them.  Finish

17   Line invites the Court to sever any provisions it believes are unconscionable and enforce the

18   remainder of the Arbitration Agreement.[1]

---

[1] Finish Line briefly argues that Capili's opposition fails at the outset because she only challenges
the enforceability of the August 26, 2013 Arbitration Agreement (the agreement included in her
new hire packet), and not the arbitration clause she accepted on August 13, 2013 as part of the
application process.  Reply at 2.  The Court disagrees.  First, it appears that the August 13th
agreement expressly incorporates the same "The Finish Line, Inc. Employee Dispute Resolution
Plan" that constitutes the August 26th Arbitration Agreement.  *See* Mot. at 2.  Second, even if
there were some difference between the arbitration agreements, the Court is not convinced those
differences would affect its analysis.  Although neither party has directed the Court to California
law on this question, "[t]he general rule is that when parties enter into a second contract dealing
with the same subject matter as their first contract without stating whether the second contract
operates to discharge or substitute for the first contract, the two contracts must be interpreted
together and the latter contract prevails to the extent they are inconsistent."  17A C.J.S. Contracts
§ 574 (collecting cases).  In this case, both the August 13th and August 26th agreements require
Capili to arbitrate the same types of employment-related claims arising out of her position at
Finish Line.  Even assuming these agreements are somehow different, Finish Line has provided
the Court no legal authority and no argument suggesting that the August 13th agreement provides
an independent obligation to arbitrate given that the same subject matter is covered by the August
26th Arbitration Agreement.

United States District Court
Northern District of California

1    In California, a contract must be both procedurally and substantively unconscionable to be

2    rendered invalid.  *Chavarria v. Ralphs Grocery Co.,* 733 F.3d 916, 922 (9th Cir. 2013).  In

3    determining procedural unconscionability, courts focus on the existence of oppression and surprise

4    due to unequal bargaining power.  *Armendariz v. Fdn. Health Psychcare Servs., Inc.,* 24 Cal.4th

5    83, 114 (2000).  The substantive element focuses on "overly harsh" or "one-sided" results.  *Id.*

6    Courts apply a "sliding scale" where procedural and substantive unconscionability need not be

7    present in the same degree.  A showing of greater substantive unconscionability will require less

8    evidence of procedural unconscionability and vice versa.  *Id.*  However, both forms of

9    unconscionability must be present in some amount "for the court to exercise its discretion to refuse

10   to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts,* 51

11   Cal. App. 4th 1519, 1533 (1997).  The party opposing arbitration bears the burden to demonstrate

12   unconscionability.  *Sonic-Calabasas A, Inc. v. Moreno,* 57 Cal.4th 1109, 1148 (2013).

13        **A.    Procedural Unconscionability**

14        Procedural unconscionability "addresses the circumstances of contract negotiation and

15   formation, focusing on oppression or surprise due to unequal bargaining power." *Pinnacle*

16   *Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 246 (2012) (citing

17   *Armendariz*, 24 Cal.4th at 114).  "Oppression arises from an inequality of bargaining power which

18   results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the

19   extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in

20   a superior bargaining position." *Serpa v. California Surety Investigations, Inc.,* 215 Cal. App. 4th

21   695, 703 (2013) (citations and quotations omitted).

22        The Court first focuses on whether the Arbitration Agreement is a contract of adhesion.

23   *Armendariz,* 24 Cal.4th at 114.  A contract of adhesion is "a standardized contract, which,

24   imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party

25   only the opportunity to adhere to the contract or reject it." *Id.* at 113 (discussing employment

26   contract where arbitration agreement was condition of employment and there was no opportunity

27   to negotiate).  Under California law, a contract of adhesion has an element of procedural

28   unconscionability because it is "presented on a take-it-or-leave-it basis and [is] oppressive due to

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   'an inequality of bargaining power that result[ed] in no real negotiation and an absence of

2   meaningful choice.'" *Nagrampa v. MailCoups Inc.,* 469 F.3d 1257, 1281 (9th Cir. 2006).

3          In this case, Finish Line does not dispute that the Arbitration Agreement was provided to

4   Capili on a "take-it-or-leave-it" basis.  Capili was informed that the Arbitration Agreement would

5   apply through an automated process on Finish Line's website and that "Capili's agreement to the

6   [Arbitration Agreement] was a condition for continued employment at Finish Line."  Mot. at 3.

7   Finish Line does not assert that it would have negotiated the terms of its Arbitration Agreement

8   with Capili—a retail sales associate—or that Finish Line's unequal bargaining power was

9   mitigated by Capili's sophistication.  *See Haisha Corp. v. Sprint Solutions, Inc.*, No. 14-cv-2773-

10  GPC MDD, 2015 WL 224407, at *5 (S.D. Cal. Jan. 15, 2015) (finding that the fact that the parties

11  to the arbitration agreement were "two sophisticated corporate entities" mitigated against a finding

12  of procedural unconscionability).  Although the Court notes that the fact that Finish Line's

13  automated process specifically called out the Arbitration Agreement reduces the level of

14  unfairness, *see Molina v. Scandinavian Designs, Inc.,* No. 13-cv-4256 NC, 2014 WL 1615177, at

15  *7 (N.D. Cal. Apr. 21, 2014) (holding the amount of procedural unconscionabilty was limited by

16  the fact that the arbitration agreement was presented as a separate two page document), the Court

17  finds that the circumstances of the parties' agreement demonstrates at least some level of

18  procedural unconscionability.[2]

19         **B.    Substantive Unconscionability**

20          Substantive unconscionability focuses on the actual terms of the agreement and evaluates

21  whether they create an "overly harsh" or "one-sided" result.  *Armendariz,* 24 Cal.4th at 114.  The

22  relevant question when evaluating substantive unconscionability is "whether contractual

23  provisions reallocate risks in an objectively unreasonable or unexpected manner."  *Serpa,* 215 Cal.

24

25  _____

26  [2] Because the Court finds that the Arbitration Agreement is procedurally unconscionable even
    without reference to Finish Line's failure to provide the applicable AAA rules, the Court need not
    reach this murky issue.  *Compare Sparks v. Vista Del Mar Child and Family Servs*., 207 Cal. App.
27  4th 1511, 1523 (2012) (holding failure to provide a copy of arbitration rules supports a finding of
    procedural unconscionability) *with Lane v. Francis Capital Mgmt.,* 224 Cal. App. 4th 676, 690
28  (2014) (failure to attach rules to arbitration agreement not procedurally unconscionable where
    rules generally available to public).

App. 4th at 703.  "[T]he paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc.,* 115 Cal. App. 4th 638, 657 (2004).  California law requires an arbitration agreement to have a "modicum of bilaterality," *see Armendariz,* 24 Cal.4th at 117, and arbitration provisions that are "unfairly one-sided" without justification, are substantively unconscionable, *see Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 1071-72 (2003); *Kinney v. United HealthCare Servs., Inc.,* 70 Cal.App.4th 1322, 1332, 83 Cal.Rptr.2d 348 (1999) (arbitration to compel the employee but not the employer to submit claims to arbitration was unconscionable).

In this case, Capili argues that seven provisions of the Arbitration Agreement are substantively unconscionable.  However, the Court only reaches three of these provisions as they alone are sufficient to render the entire agreement unenforceable.

### 1. Forum Selection Clause

"[F]orum selection clauses are valid and should be given effect unless enforcement of the clause would be unreasonable."  *Intershop Commc'ns, AG v. Superior Court,* 104 Cal. App. 4th 191, 196 (2002) (citing *Smith, Valentino & Smith, Inc. v. Superior Court,* 17 Cal.3d 491, 495-96 (1976)).  However, if the "place and manner" restrictions of a forum selection provision are "unduly oppressive," *see Bolter v. Superior Court,* 87 Cal. App. 4th 900, 909-10 (2001), or have the effect of shielding the stronger party from liability, *see Comb v. PayPal, Inc.,* 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002), then the forum selection provision is unconscionable.

The Arbitration Agreement at issue here provides that "[t]he Arbitration shall take place in Indianapolis, Indiana" and that "[a]ny challenge to the enforceability of this Plan or an arbitrator's award shall be filed in federal court in the Southern District of Indiana, Indianapolis Division, or in a state court situated in Marion County, Indiana."  Capili asserts that this forum selection clause is unreasonable because it requires her to arbitrate with and/or sue Finish Line thousands of miles away from where she worked in Daly City, California.  Opp. at 4-5.

Finish Line's papers do not dispute that the forum selection clause is unconscionable.  *See* Reply at 8.  Instead, Finish Line argues that the forum selection clause is moot because it has agreed to hold the arbitration in San Francisco, California and that it has put the Arbitration

1   Agreement at issue in the Northern District of California by moving to compel arbitration in this

2   action.  *Id*.  Finish Line suggests that the Court exercise its discretion to sever the forum selection

3   provision.  *Id*.

4         The Court agrees with Capili that the forum selection clause in the Arbitration Agreement

5   is unconscionable.  Forcing a retail shoe store employee to initiate an arbitration and/or challenge

6   an arbitration agreement thousands of miles away from her place of work erects a substantial

7   barrier to the vindication of the statutory discrimination claims at issue in this case.  *See Bolter v.*

8   *Superior Court,* 87 Cal. App. 4th 900, 909 (2001) (finding that enforcement of forum selection

9   clause providing that claims are arbitrated exclusively in Utah would be cost prohibitive in light of

10  fact that the potential claimants located around the country would be required to retain counsel

11  familiar with Utah law); *Comb*, 218 F. Supp. 2d at 1177 ("Limiting venue to PayPal's backyard

12  appears to be yet one more means by which the arbitration clause serves to shield PayPal from

13  liability instead of providing a neutral forum in which to arbitrate disputes.").

14        **2.   Exemption of Certain Claims**

15        An arbitration agreement may be unconscionable where it "requir[es] arbitration only for

16  the claims of the weaker party but [provides] a choice of forums for the claims of the stronger

17  party."  *Armendariz,* 24 Cal.4th at 119.  Finish Line's Arbitration Agreement does exactly that.

18        The Arbitration Agreement requires Capili and Finish Line to arbitrate claims for wages,

19  compensation, and some benefits.  *See* Dkt. No. 20-4 at 3.  It also requires both parties to arbitrate

20  state and federal statutory claims, contract and tort claims, and claims of discrimination.  *Id*.  The

21  agreement does not apply to claims by Capili for workers compensation or unemployment

22  benefits.  *Id*.  It further exempts any "claims by [Finish Line] for injunctive and/or other equitable

23  relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or

24  confidential information."  *Id*.  By the Arbitration Agreement's express terms, Finish Line—but

25  not Capili—retains the right to pursue judicial remedies concerning those causes of action.  *Id*.

26        In *Martinez v. Master Protection Corp.*, the California Court of Appeal found a

27  substantively identical provision unconscionable.  118 Cal. App. 4th 107, 115 (2004).  In that case,

28  the Court found that the provision "requires employees to arbitrate the claims they are most likely

United States District Court
Northern District of California

United States District Court
Northern District of California

1   to assert against [the employer], while simultaneously permitting [the employer] to litigate in court

2   the claims it is most likely to assert against its employees." *Id.* For example, "[c]laims for unpaid

3   wages, wrongful termination, employment discrimination and the like invariably are brought by

4   employees, while claims involving trade secrets, misuse or disclosure of confidential information,

5   and unfair competition typically are asserted only by employers." *Id.* The Court expressly

6   rejected the employer's argument that the exclusions were mutual (an argument asserted by Finish

7   Line here) holding that exemptions for workers compensation and unemployment claims were

8   immaterial because those claims are subject to their own adjudicatory systems. *See id.* ("The fact

9   that Martinez is not required to arbitrate benefit claims, or any claim for workers' compensation or

10  unemployment benefits is immaterial.") (citation omitted); *see also Mercuro v. Superior Court*, 96

11  Cal. App. 4th 167, 176 (2002) (finding no mutuality even where employee's claims for workers'

12  compensation and unemployment benefits were excluded from arbitration agreement because

13  "[w]orkers' compensation and unemployment benefits are governed by their own adjudicatory

14  systems; neither is a proper subject matter for arbitration").

15       The Court agrees with the California Court of Appeals decisions in *Martinez* and *Mercuro*,

16  and finds that the only relevant exception provided by Finish Line's Arbitration Agreement is for

17  the claims that it, as the employer, is most likely to bring. Accordingly, this provision of the

18  Arbitration Agreement is substantively unconscionable. *See Armendariz*, 24 Cal. 4th at 118 ("[I]n

19  the context of an arbitration agreement imposed by the employer on the employee, such a one-

20  sided term is unconscionable.").

21       **3. Cost Sharing**

22       "[W]hen an employer imposes mandatory arbitration as a condition of employment, the

23  arbitration agreement or arbitration process cannot generally require the employee to bear any type

24  of expense that the employee would not be required to bear if he or she were free to bring the

25  action in court." *Armendariz*, Cal.4th at 110-11. When an arbitration agreement encompasses

26  claims under FEHA, the arbitration agreement must assign the costs of arbitration to the employer.

27  *See id.* at 113 ("[M]andatory employment arbitration agreement that contains within its scope the

28  arbitration of FEHA claims impliedly obliges the employer to pay all types of costs that are unique

8

1     to arbitration.").

2          Capili argues that Paragraph 13 of the Arbitration Agreement violates this requirement

3     because it covers FEHA claims but provides that "[t]he parties shall equally share the cost of any

4     filing fee and the fees and costs of the Arbitrator; provided, however, that the Employee's

5     maximum contribution shall be the greater of (i) $10,000.00 or (ii) 10% of the amount in

6     controversy." Opp. at 8.  Under that provision, the Arbitrator may only reduce the cost to the

7     employee "upon a showing of substantial need." *Id.*  Finish Line does not dispute that this

8     provision is unconscionable under *Armendariz*.  Reply at 9.  Instead, Finish Line argues that,

9     because it has offered to pay Capili's share of the AAA arbitration fees and costs, the provision is

10    moot. *Id.*  Alternatively, Finish Line suggests that the Court sever this provision from the

11    Arbitration Agreement and enforce the remainder. *Id.*

12         The Court agrees with Capili that the cost sharing provision is unenforceable under

13    *Armendariz*.

14        **C.     The Entire Arbitration Agreement is Unenforceable**

15         A court has discretion to either sever an unconscionable provision from an agreement or

16    refuse to enforce the agreement in its entirety. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1005 (9th

17    Cir. 2010) (citation omitted).  California law allows the court to sever any unconscionable

18    provisions so long as they are "merely collateral to the main purpose of the arbitration agreement."

19    *See Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1179 (S.D. Cal. 2011) (citing *Armendariz*, 24

20    Cal.4th at 124).  "In exercising this discretion, courts look to whether the 'central purpose of the

21    contract is tainted with illegality' or 'the illegality is collateral to [its] main purpose.'" *Ingle v.*

22    *Circuit City Stores, Inc.,* 328 F.3d 1165, 1180 (9th Cir. 2003).

23         The Court finds that the unconscionable provisions of the Arbitration Agreement are not

24    merely "collateral."  Although some courts have severed unconscionable forum selection

25    provisions, *see Haisha*, 2015 WL 224407 at *10, Finish Line has cited no case where a court has

26    enforced an arbitration agreement after severing unconscionable forum selection, cost sharing, and

27    mutuality provisions.  In short, the unconscionable provisions included in the Arbitration

28    Agreement are simply too numerous and too important to be severed from the whole. *See*

United States District Court
Northern District of California

1    *Armendariz*, 24 Cal.4th at 124 (holding that the existence of two unconscionable provisions

2    weighed in favor of voiding the entire agreement because "multiple defects indicate a systematic

3    effort to impose arbitration on an employee not simply as an alternative to litigation, but as an

4    inferior forum that works to the employer's advantage").  Accordingly, the Court finds that the

5    Arbitration Agreement is so "'permeated' by unconscionability [it] could only be saved, if at all,

6    by a reformation beyond [the Court's] authority."  *Mercuro*, 96 Cal. App. 4th at 182 (citation

7    omitted); *see also Ingle*, 328 F.3d at 1180 ("Any earnest attempt to ameliorate the unconscionable

8    aspects of [the arbitration agreement] would require this court to assume the role of contract

9    author rather than interpreter.").

10           Finish Line's willingness to waive the unconscionable provisions in its Arbitration

11   Agreement does not cure these problems.  The California Supreme Court has found that an

12   employer's offer "to allow the arbitration provision to be mutually applicable, or to encompass the

13   full range of remedies, does not change the fact that the arbitration agreement as written is

14   unconscionable and contrary to public policy."  *Armendariz*, 24 Cal.4th at 125; *see also id.* ("Such

15   a willingness 'can be seen, at most, as an offer to modify the contract; an offer that was never

16   accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract

17   merely by offering to change it.'") (citation omitted).  As California Appellate Courts have

18   recognized, the mere inclusion of these unconscionable provisions has an improper chilling effect

19   notwithstanding Finish Line's newfound willingness to waive them.  *See Martinez*, 118 Cal. App.

20   4th at 117 ("The mere inclusion of the costs provision in the arbitration agreement produces an

21   unacceptable chilling effect, notwithstanding [the employer's] belated willingness to excise that

22   portion of the agreement.").

23           This Court agrees.  Permitting the Arbitration Agreement to stand because Finish Line has

24   offered to waive numerous unconscionable provisions would provide a perverse incentive for

25   Finish Line and other employers.  Were that the law, employers would have every incentive to

26   pack their arbitration agreements with unenforceable provisions designed to chill employees'

27   pursuit of employment-related claims, then simply agree to waive those provisions in the rare

28   event they are challenged in court.  The Court will not reward this tactic.  If Finish Line wishes to

United States District Court
Northern District of California

10

compel arbitration of employment-related disputes, it must draft an agreement that is not

permeated with unenforceable provisions.  The Court does not believe this is too much to ask.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Finish Line's Arbitration Agreement is both

procedurally and substantively unconscionable.  The Court further finds that the Arbitration

Agreement is so permeated with unconscionability that the entire agreement is unenforceable and

therefore **DENIES** Finish Line's motion to compel binding arbitration.

**IT IS SO ORDERED.**

Dated: July 22, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge