UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITAROSE CAPILI,<br><br>    Plaintiff,<br><br>    v.<br><br>THE FINISH LINE, INC.,<br><br>    Defendant. | Case No. 15-cv-01158-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 48 |

Currently pending before the Court is Defendant The Finish Line, Inc.'s ("The Finish Line") motion for summary judgment on Plaintiff Ritarose Capili's claims. Dkt. No. 48 ("Mot."); *see* Dkt. No. 1 ("Compl."). Defendant filed its motion on February 12, 2018. On February 24, 2018, Plaintiff filed an opposition to the motion. Dkt. No. 51 ("Opp."). Defendant replied on March 5, 2018. Dkt. No. 59 ("Reply"). On April 26, 2018, the Court heard argument on the motions. After carefully considering the parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

## I. BACKGROUND

Unless otherwise noted, the facts set forth in this section are not disputed. As necessary, the Court discusses further factual details in the course of its analysis.

### A. Defendant's Leave Policies

Defendant sells athletic shoe and apparel products. Dkt. No. 48-1 ("Lockhart Decl.") ¶ 1. Defendant contracts with Cigna (also known as Life Insurance of North America ("LINA")) to administer its employee leave policies. Dkt. No. 48-7 ("Lockhart MSJ Dep.") at 12:11–24; Lockhart Decl. ¶¶ 14, 16. According to Defendant, LINA administers all leave requests submitted by Defendant's employees. Dkt. No. 48-4 ("Stanish Dep.") at 95:1–96:9. That includes disability

leave under the California Family Rights Act ("CFRA") and California's Pregnancy Disability Leave law. Dkt. No. 52-1 ("Lockhart Opp. Dep."), Ex. 2 ("the Leave Agreement"), Ex. A. In its capacity as leave administrator, LINA communicates with Defendant's employees regarding leave requests. *Id.*

Defendant provides "eligible employees" with different types of leave depending on their circumstances: "FMLA" leave, pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601, non-FMLA Medical Leave, Uniformed Service Leave, and Personal Leave. Dkt. No. 48-9 ("Capili MSJ Dep."), Ex. 8. Defendant distributes to its employees a handout describing available types of leave and how an employee becomes eligible for each type of leave. *Id.*

To qualify for FMLA leave, an employee must meet certain conditions, including by working a minimum number of hours in the twelve months preceding an employee's absence. *Id.* For employees seeking FMLA-medical leave, Defendant requires a medical certification be submitted in support of the leave request. *Id.* "The medical certification must be completed prior to the leave if the need for the leave is foreseeable, or as soon as practicable if the leave is not foreseeable (within 15 days of the date the employee receives the request for certification)." *Id.* The handout continues, in italics:

> It is your responsibility to have this form completed and returned within fifteen (15) days. A failure to provide the required medical certification will result in the leave being denied and the time designated as non-FMLA qualifying with the absences being counted as unexcused pursuant to the Company's attendance policy.

*Id.*

With respect to non-FMLA leave, Defendant's policies set forth that "[a]n employee who does not qualify for FMLA leave but needs to be off duty due to medical reasons, including maternity, may apply to take a non-FMLA Medical Leave of Absence." *Id.* Under Defendant's Non-FMLA Medical Leave Policy, an employee "must submit a written request to his/her manager and Human Resources. Supporting documentation from the physician stating the reason and anticipated amount of time off is also required." *Id.* Handouts provided by email to all store employees explain that FMLA-leave certification procedures apply to non-FMLA leave, such that an employee must return a certification within fifteen days. Lockhart Decl. ¶¶ 5, 12–16, Ex. 1.

To return to work from non-FMLA leave, Defendant's policy sets forth that the employee "must provide a release to work slip prior to their first day back if requested by supervisor or HR." Capili MSJ Dep., Ex. 8. Defendant does not allow employees to return to work without a release. *Id.* The policy informs employees that their failure to return from "any type of leave on the agreed upon date without an approved extension may result in termination for job abandonment unless an extension of leave was approved." *Id.*

Plaintiff signed a copy of a handout explaining Defendant's leave policies as part of her onboarding on August 26, 2013. *Id.*; Lockhart MSJ Dep. at 11:1–7. Plaintiff also completed an e-learning course that contained Defendant's leave policies. Lockhart Decl. ¶¶ 7–11, Exs. 3–4.

### B. Plaintiff's Employment

Plaintiff was employed by Defendant as a "Sales Lead" from approximately August 28, 2013 to her termination, communicated on July 8, 2014. Capili MSJ Dep. at 268:1–9; Lockhart Decl. ¶ 9. Plaintiff was one of six employees working at a Finish Line location in a Macy's store. Mot. at 3. On March 3, 2014, Plaintiff informed her regional manager, Mari Nelson, that she was pregnant. Capili MSJ Dep. at 106:14–107:6. She indicated that she did not want to voluntarily separate from her employment at that time. *Id.* at 107:20–25.

On May 9, 2014, Plaintiff received a "Work Status Report" from her physician. Capili MSJ Dep. at 149:23–150:25, Ex. 25. The document states that Plaintiff was "placed off work from 5/9/2014 through 5/19/2014." *Id.* at Ex. 25. Plaintiff's diagnosis includes "high-risk pregnancy, anxiety, and pregnancy." *Id.* The report states that Plaintiff's need to be off work would be reevaluated on May 19, 2014. *Id.* On her way home from the doctor, Capili stopped by her workplace to show her diagnosis to her Store Manager, Christopher Ferrer. *Id.* at 150:6–151:16.

On May 19, 2014, Ferrer contacted Plaintiff and asked when she would be returning to work. *Id.* at 154:15–155:4. Plaintiff responded the next day, stating that she understood her leave to be extended based on a need for additional treatment. *Id.* at 155:4–156:4. Plaintiff did not then provide an anticipated return to work date; instead, she indicated that she might need to "get admitted." *Id.* Ferrer explained that they would need to submit "a reg[ular] leave of absence," not

3

United States District Court
Northern District of California

1  a request for maternity leave. *Id.* at 156:13–21. Plaintiff indicated that she would come to work that Saturday, May 24 to complete the leave paperwork. *Id.* at 156:22–157:3. According to Plaintiff, Ferrer was not there when she arrived on May 24, and there were no leave forms for her to sign. *Id.* at 160:9–13.

On May 29, 2014, Plaintiff contacted LINA regarding a request for personal leave. Stanish Dep. at 29:5–15. Plaintiff began filing her request that day, and finished the filing on May 30, 2014. *Id.* Plaintiff requested leave from May 9, 2014 to June 19, 2014. *Id.* at 32:13–15. On May 30, LINA sent Plaintiff a letter regarding her leave request. *Id.* at 31:8–33:7. That letter indicated that LINA received Capili's leave request, explained that her leave eligibility was then undetermined, and requested that Capili complete and return an enclosed medical certification form within 15 days of the letter. Capili MSJ Dep. at 179:8–182:25, Ex 30. The certification enclosed with Defendant's letter is entitled "Certification of Health Care Provider for Pregnancy Disability Leave/Employee's Serious Health Condition." *Id.* (the "Medical Certification Form"). The letter indicates that failure to return the Medical Certification Form could result in the denial of Plaintiff's leave. *Id.* The letter to Plaintiff also included a "Fitness for Duty Certification" form, which Plaintiff was required to complete and return at least two days prior to her return to work. *Id.* Finally, the packet mailed to Plaintiff included information on policies and procedures for taking leave under the FMLA, CFRA, and California's Pregnancy Disability Leave law. *Id.*

On June 2, 2014, June 12, 2014, June 18, 2014, and June 19, 2014, LINA sent Capili letters regarding her leave request. The June 2, 2014 letter specifies that Plaintiff was not eligible for FMLA or CFRA leave because she had not worked a minimum number of hours in the preceding twelve months. *Id.* at Ex. 31. The June 2 letter indicates that a determination was pending regarding Plaintiff's eligibility for non-FMLA leave, and that she would need to submit by June 17, 2014 the enclosed Medical Certification Form authorizing her leave. *Id.*

The June 12, 2014 letter to Plaintiff explains that Plaintiff's requested leave was scheduled to end on June 19, 2014, and that she would "be expected to return to [her] normal schedule on the first working day following [her] leave end date." *Id.* at Ex. 36. The letter asked Plaintiff to contact LINA and request an extension if she was unable to return to work. Finally, the letter

4

states that Plaintiff's physician would need to complete the Fitness for Duty Certification (i.e., the return to work release) if she were to return to work. *Id.*

The June 18, 2014 letter to Plaintiff states that LINA received Plaintiff's leave of absence request for "Employee Health Condition." *Id.* at Ex. 37. The letter continues that Plaintiff's non-FMLA leave had been denied based on her failure to return the Medical Certification Form. *Id.* The letter explained that, as a result of this denial, "any time off from work is not approved and may follow the attendance policy." *Id.* The letter indicated that Plaintiff should contact Human Resources to discuss her employment status. *Id.* The June, 19, 2014 letter was virtually identical to the one sent the prior day.

On June 19, 2014, Capili called LINA. Dkt. No. 54-1 ("Stanish Opp. Dep."), Ex. 2. Capili told LINA that her leave end date was changing from June 19 to June 25, 2014. *Id.*

On or about July 3, 2014, Nelson called Capili. Capili MSJ Dep. at 100:5–8, 218:18–24. Nelson asked Capili to submit the missing documentation so that Capili could return to work. *Id.* at 221:12–21. Nelson indicated that there could be "complications" to Capili's return to work if she failed to submit the requested documentation. *Id.* at 269:12–270:10. That same day, Capili called LINA to check on the status of her leave. Capili Opp. Dep. at 221:8–24; Stanish Opp. Dep., Ex. 2. While on the call, Plaintiff spoke with Michael Stanish, a leave coordinator at LINA. Stanish Dep. at 31:21–24. Plaintiff claims that she told Stanish that she sent in a signed Medical Certification Form. Capili Opp. Dep. at 224:2–13. Stanish told Capili that the certification had not yet been received, but that Capili's physician could still complete the certification and return it to LINA. *Id.*

On July 11, 2014, Nelson informed Capili that Defendant had terminated her employment. Capili MSJ Dep. at 270:22–271:25. Capili told Nelson that she had submitted the required paperwork. *Id.* Nelson suggested that if Capili had sent the proper paperwork, it was a "possibility" that Defendant could reverse her termination. *Id.* That same day, Capili faxed LINA a packet of paperwork that included two separate signed Medical Certification Forms. *Id.* at 272:18–275:19, Ex. 53. Both of the Medical Certification Forms specified that Capili could return to work with restrictions. *See id.*; Capili MSJ Dep. at 207:1–19; Capili Opp. Dep. at 200:11–

5

207:14, Ex 35. Neither form authorized Capili's leave request beyond May 19. Capili MSJ Dep. at 276:13–20.

On July 14, LINA sent Capili another letter, indicating that it had received Capili's request for "Employee Health Condition." Capili MSJ Dep., Ex. 54. That letter states that LINA approved Plaintiff's leave request from May 9 through May 19, 2014. *Id.* The letter also explains that LINA denied Plaintiff's leave request from May 20, 2014 to June 25, 2014. *Id.* LINA's records indicate that it denied Capili's leave request from May 20 to June 25 because Capili's doctor had authorized leave only from May 9 through May 19. Stanish Opp. Dep., Ex. 2.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at

325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

## III. DISCUSSION

Defendant moves for summary judgment on all claims asserted in Capili's operative complaint, including: claims 1–2 for disability discrimination and discrimination based on pregnancy/sex, Cal. Gov. Code § 12940 ("Fair Employment and Housing Act" or "FEHA"), 2 Cal. Code Regs. §§ 11029, 11039; claim 3 for failure to engage in the interactive process, Cal. Gov. Code § 12940(n), 2 Cal. Code Regs. §§ 11040, 11060; claim 4 for failure to provide notice, 2 Cal. Code Regs. §§ 11049, 11051; claim 5 for failure to provide a reasonable accommodation, Cal. Gov. Code § 12940, 2 Cal. Code Regs. § 11608; claim 6 for failure to provide a reasonable accommodation, Cal Gov. Code § 12945, 2 Cal. Code Regs. §§ 11039, 11040; claim 7 for failure to provide leave under Cal. Gov. Code § 12945, 2 Cal. Code Regs. §§ 11039, 11042; claim 8 for interference, restraint, denial of the exercise of, or attempt to exercise rights, Cal. Gov. Code § 12945(a), 2 Cal. Code Regs. § 11039; claim 9 for failure to take reasonable steps to prevent discrimination and harassment, Cal. Gov. Code § 12940(k); claim 10 for retaliation, Cal. Gov. Code § 12940, 2 Cal. Code Regs. § 11039; claims 11–12 for wrongful discrimination and termination based on disability and sex/pregnancy in violation of public policy; and claim 13 for

wrongful termination for exercising or attempting to exercise rights in violation of public policy. Mot. at 1–2.

### A. Plaintiff's First, Second, Ninth, Eleventh and Twelfth Claims for Discrimination and/or Wrongful Termination Based on Disability and/or Gender/Pregnancy

Defendant moves for summary judgment on Plaintiff's first, second, ninth, eleventh and twelfth claims pertaining to Defendant's alleged discrimination and/or termination on the basis of Plaintiff's disability and/or gender/pregnancy. Mot. at 14. Defendant characterizes Plaintiff's ninth, eleventh, and twelfth claims as derivative of her first two claims, and argues that they fail for the same reasons. *See id.* at 14. Plaintiff does not argue that these claims are not derivative of her underlying discrimination claims. *See* Opp. at 22–23.

#### i. Legal Standard

"Under the FEHA, it is unlawful for an employer to discriminate against an employee because of the employee's physical disability." *Cuiellette v. City of Los Angeles*, 123 Cal. Rptr. 3d 562, 568 (Ct. App. 2011). "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." *Guz v. Bechtel Nat. Inc.*, 8 P.3d 1089, 1113 (Cal. 2000). When analyzing disparate treatment claims under FEHA, California courts use the three-stage burden shifting test elaborated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under that framework, the plaintiff must first establish a prima facie case of discrimination; the burden then shifts to the employer to show a "legitimate, nondiscriminatory reason" for the adverse employment action; and finally the burden shifts back to the plaintiff to prove that the employer's asserted reasons for the action are pretextual. *Hanson v. Lucky Stores Inc.*, 74 Cal. App. 4th 215, 224 (1999). To establish a prima facie case of discrimination, Plaintiff must show that "(1) [s]he was a member of a protected class, (2) [s]he was qualified for the position [s]he sought or was performing competently in the position [s]he held, (3) [s]he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz*, 8 P.3d at 1113.

Here, however, "the burden is reversed. . . because the defendant who seeks summary

judgment bears the initial burden" in an employment discrimination action. *Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (interpreting FEHA) (quotations and citations omitted); *Hanson*, 74 Cal. App. 4th at 224. That is, the defendant bears the initial burden to "show either that (1) plaintiff [can]not establish one of the elements of the FEHA claim or (2) there [is] a legitimate, nondiscriminatory reason for its actions." *Lucent*, 642 F.3d at 745 (citations and quotations omitted). "[L]egitimate reasons are reasons that are *facially unrelated to prohibited bias,* and which, if true, would thus preclude a finding *of discrimination*." *Reeves v. MV Transp., Inc.*, 111 Cal. Rptr. 3d 896, 902 (Ct. App. 2010) (quotations omitted and emphasis in original). "To avoid summary judgment, the employee must then 'offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.'" *Id.* (quoting *Hersant v. Department of Social Services* 67 Cal. Rptr. 2d 483 (Ct. App. 1997)).

### ii. Discussion

Defendant argues that Plaintiff cannot satisfy the *McDonnell Douglas* burden shifting test for three reasons.

First, Defendant claims that Plaintiff cannot establish a prima facie case of discrimination. Mot. at 14. Defendant argues that Plaintiff's leave request represented that she "was completely incapable of performing work of any kind," including by implication, the essential functions of her position. *Id.* at 15–16. Defendant asserts that there was "no accommodation which would have allowed Capili to perform her job as Sales Lead." *Id.* Defendant, however, fails to present any authority, binding or otherwise, to support the claim that an employee's leave request necessarily communicates an inability to return to her position in some capacity. Prior to Capili's termination, Defendant had some affirmative obligation to make a reasonable accommodation. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (finding that an employer has an "affirmative duty" under the Americans with Disabilities Act ("ADA") "to explore further

9

methods of accommodation" before terminating an employee);[1] Cal. Govt. Code § 12940(m) (establishing that an employer has an "affirmative duty" to make reasonable accommodation for a disability if the employer knows of the disability, unless that accommodation would impose an undue hardship). Defendant consequently fails to show at this stage that Capili's leave request necessarily precludes her from making out a prima facie case of discrimination.

Second, Defendant argues that Plaintiff cannot rebut Defendant's legitimate, nondiscriminatory reason for terminating her employment—here, Plaintiff's failure to comply with Defendant's leave policies. Those policies obligated Plaintiff to (1) submit the requested Medical Certification Form to support her leave beyond May 19; (2) request an extension of leave; or (3) return to work with the Fitness for Duty Certification form. *See* Lockhart MSJ Dep. at 53:13–16. Capili does not dispute that this was Defendant's policy for non-FMLA leave. *See* Opp. at 22–23. Rather, Capili claims that she "was terminated because of Defendant's failure to reasonably accommodate a known disability by allowing her leave which led to her discharge." *Id.* at 23.

Capili, however, fails to set forth any evidence suggesting that Defendant's termination decision was discriminatory. Put simply, the record is devoid of facts showing that Defendant discharged Capili on the basis of her disability, pregnancy, or sex. *Cf. Humphrey*, 239 F.3d at 1134 (finding a triable issue as to whether the defendant wrongfully terminated the plaintiff, observing that the evidence was "undisputed" regarding the plaintiff's inability to care for herself). Capili does not present evidence linking her pregnancy with her absenteeism, or with her inability to timely remit a completed Medical Certification Form authorizing leave beyond May 19. There is, in contrast, overwhelming evidence suggesting that Defendant terminated Capili for legitimate reasons: that is, her failure to return to work for nearly two months without authorization. Capili does not dispute that she received all of LINA's letters regarding her leave eligibility. Capili MSJ Dep. at 179:8–17, 187:12–21, 208:18–24, 210:1-21; 215:8–216:20. Capili also does not argue that

---

[1] "Because the FEHA provisions relating to disability discrimination are based on the ADA, decisions interpreting federal anti-discrimination laws are relevant in interpreting the FEHA's similar provisions." *Humphrey*, 239 F.3d at 1133 n.6.

10

she complied with Defendant's return to work policy by returning to work with a completed Fitness for Duty Certification. It is otherwise unclear what evidence supports Capili's discrimination claims, beyond the mere fact that she was pregnant at the time of her absence and discharge.

Though Capili does not expressly cite this evidence in her opposition, the two Medical Certification Forms sent by Capili on July 11, 2014 do not create a genuine factual dispute. First, Capili submitted those forms <u>after</u> she was fired on July 8 for missing nearly two months of work without authorization. Those forms therefore fail to address whether Defendant wrongfully terminated Capili pursuant to its leave policy. In addition, Capili admitted in her deposition that the Medical Certification Forms sent on July 11 do not actually authorize her medical leave past May 19. *Id.* at 276:13–20. Drawing all inferences in Capili's favor, the Court cannot discern a genuine dispute of material fact regarding the legitimacy of Defendant's termination decision.

California district courts have granted summary judgment where a plaintiff fails to timely remit medical documents that authorize her leave in accordance with an employer's policy. *See* Mot. at 17. For instance, in *Alcala v. Best Buy Stores, LP*, the court found summary judgment appropriate in part because the defendant presented legitimate, non-discriminatory reasons for terminating the plaintiff. No. EDCV 11-00798-JVS, 2012 WL 6138332, at *6 (C.D. Cal. Nov. 7, 2012). So holding, the court explained:

> Defendant provides extensive evidence, including its Attendance Policy, FMLA Policy, Alcala's submitted medical certification forms, the Designation Notices, and the Involuntary Separation Notice. The documents show Alcala was terminated because he failed to submit a complete medical certification to confirm his leave of absence was protected under FMLA and CFRA and therefore excused. Alcala does not seriously dispute that a failure to produce adequate medical certification for a leave of absence is an innocent explanation for termination. Accordingly, the Court finds that Defendant meets its burden at this step.

*Id.* In addition, in *Smyly v. IBM Corp.*, a court in this district found that the "plaintiff's failure to provide written documentation to justify her claimed medical leave" "presented a legitimate, non-discriminatory reason" for terminating the plaintiff's employment. No. C 93-20149 RMW-EAI, 1995 WL 7745, at *12 (N.D. Cal. Jan. 4, 1995).

The Ninth Circuit has affirmed summary judgment in similar circumstances. In *Brown v. Lucky Stores, Inc.*, the plaintiff failed to present "any evidence that she was terminated because of her status as an alcoholic" under the ADA. 246 F.3d 1182, 1187 (9th Cir. 2001) (citing *Wellington v. Lyon County Sch. Dist.*, 187 F.3d 1150, 1154 (9th Cir.1999)). Rather, the evidence showed that the plaintiff's employer "terminated her pursuant to its general policy under which three consecutive unexcused absences from work warrant termination." *Id.* The case on which Capili exclusively relies is distinguishable for related reasons. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d at 1137. In *Humphrey*, the Ninth Circuit found a triable issue as to "the requisite causal link" between the plaintiff's disability (there, obsessive compulsive disorder) and her allegedly unlawful discharge. 239 F.3d at 1140. The court continued that, based on this evidence, a jury could conclude that Humphrey's employer fired her "because of her disability." *Id.* Here, in contrast, Capili fails to present any evidence that would merit a similar finding.

Even if the Court were to find a triable issue regarding the legitimacy of Defendant's termination decision, Plaintiff cannot meet her burden to show pretext or animus. Capili does not offer any direct evidence of discrimination. Indirect evidence of pretext "must be specific and substantial in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) (quotations omitted); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("To avoid summary judgment, Bradley "must do more than establish a prima facie case . . . . She must produce specific, substantial evidence of pretext. (quotations omitted)); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995) (same).

As with Plaintiff's failure to rebut the legitimacy of Defendant's termination decision, the record is "devoid of any evidence of pretext for intentional discrimination." Mot. at 17; Opp. at 22–23; *cf. Alcala*, 2012 WL 6138332, at *9–10 (finding that the plaintiff failed to show pretext because he did not present evidence "clearly demonstrating that discriminatory animus towards his medical condition was the reason for his termination"). The evidence overwhelmingly demonstrates that Defendant (1) provided Capili with several weeks of non-FMLA leave; (2) repeatedly apprised her of the need to submit a medical certification in support of leave beyond

May 19; and (3) terminated her on the basis of a failure to submit paperwork that either justified her extended leave or allowed her to return to work. Mot. at 18. Because there is no genuine factual dispute as to the reasons for Defendant's termination decision, summary judgment is appropriate on this claim.

### B. Plaintiff's Third Claim for Failure to Engage in the Interactive Process

#### i. Legal Standard

"Under the FEHA, it is an unlawful employment practice for an employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee with a known physical or mental disability." *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 742 (9th Cir. 2011) (quotations and alterations omitted). "In order to demonstrate good faith, employers can point to cooperative behavior which promotes the identification of an appropriate accommodation." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1115 (9th Cir. 2000), *vacated on other grounds sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). "[A]n employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." *Id.* "When a claim is brought for failure to reasonably accommodate the claimant's disability, the trial court's ultimate obligation is to isolate the cause of the breakdown and then assign responsibility so that liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 985 (2008) (quotations and alterations omitted).[2]

#### ii. Discussion

Defendant argues that summary judgment is appropriate on this claim because Plaintiff failed to engage with Defendant in good faith regarding her requested accommodation. According

---

[2] The Court **GRANTS** Defendant's request for judicial notice of the United States Equal Opportunity Commission's guidance entitled Employer-Provided Leave and the Americans with Disabilities Act, dated, May 9, 2016, to the extent it simply recognizes the existence of this publicly available document. *See* Dkt. No. 49. The Court need not, and does not, rely on the substance of the document.

13

to Defendant, undisputed evidence shows that it communicated with Plaintiff regarding her leave request, including through five letters and an oral warning that there could be consequences if Plaintiff did not return the medical certification authorizing leave. *See* Mot. at 19. Defendant contends that responsibility for any breakdown lies with Plaintiff, who failed to communicate with Defendant's Human Resource ("HR") department or otherwise propose an accommodation that would allow her to return to work. *Id.*

In response, Plaintiff argues that Defendant failed to engage in the interactive process by imposing a strict fifteen-day deadline for return of the Medical Certification Form. Opp. at 14. Plaintiff asserts that this deadline did not comply with FEHA because it denied Plaintiff a reasonable opportunity to cure her deficient paperwork. *Id.* at 15. In particular, Plaintiff relies on FEHA's regulations, which provide that a request for certification must be accompanied by advice from the employer to the employee regarding "the anticipated consequences of an employee's failure to provide adequate medical certification." 2 Cal. Code Regs. § 11050(b)(4). That regulation continues: "The employer shall also advise the employee whenever the employer finds a medical certification inadequate or incomplete, and provide the employee a reasonable opportunity to cure any deficiency." *Id.*

On this claim, Plaintiff narrowly presents a triable issue that precludes summary judgment. As mentioned, it is undisputed that Plaintiff failed to timely return the certification justifying leave beyond May 19. Plaintiff also does not dispute that Nelson warned her on July 3 of potential complications if Plaintiff were to return to work without the required paperwork. But Plaintiff presents evidence that she contacted LINA on three occasions in the relevant time period—first, on June 18 to extend her leave date to June 25, then, on July 3 to indicate that she was in the process of returning a completed Medical Certification Form. Both of these communications occurred prior to Plaintiff's termination. On July 11, Plaintiff faxed to LINA a packet of documents with two completed Medical Certification Forms, indicating that Capili could return to work with certain restrictions. Defendant did not engage with Capili's request to return to work with accommodations, beyond informing her on July 14 that she was still missing a Medical Certification Form authorizing leave from May 19 through June 25. Taking all inferences in

14

1  Plaintiff's favor, as the Court must, the Court concludes that these communications create a

2  genuine dispute of fact as to the parties' responsibilities for a breakdown in the interactive process.

3        In addition, there is a genuine dispute as to whether Ferrer, Nelson, or Tobias Mathis,
4  Capili's Human Resources "Business Partner," could have earlier informed Plaintiff that her
5  employment was in jeopardy. *See* Opp. at 8–9, 18–19. There is evidence that, on June 23, Nelson
6  and Mathis corresponded with Susan Lockhart, Defendant's Benefits Analyst, regarding Capili's
7  failure to submit the required certification. *See* Lockhart Opp. Dep. at 52:3–54:5, 79:21–80:4, Ex.
8  18. In that conversation, Mathis stated that "We can term her for failure to return paperwork. Let
9  me know if you need additional assistance." *Id.* But neither Mathis nor Lockhart then spoke to
10  Capili regarding her potential termination. *Id.* at 81:5–7. Lockhart also testified that Defendant
11  did not make its own "independent assessment" as to whether Plaintiff's documentation was
12  sufficient to support her leave request. Lockhart Opp. Dep. at 90:19–23. Rather, Nelson's July 3
13  warning and Plaintiff's termination, days later, were based solely on LINA's assessment of
14  Plaintiff's paperwork.

15        There is also a dispute as to when, if ever, Defendant expressly informed Plaintiff that (1)
16  she could cure her failure to timely remit the Medical Certification Form; and (2) Plaintiff would
17  be terminated for failure to submit a completed version of that form within fifteen days. For
18  instance, Nelson told Capili on July 3 that there could be "complications" to Capili's return to
19  work if she failed to remit the paperwork. Capili MSJ Dep. at 269:12–270:10. Capili testified that
20  Defendant "never said" that she would be terminated if she failed to send in the paperwork. *Id.*
21  Furthermore, Stanish admitted that LINA's correspondence to Capili did not expressly inform
22  Capili of her right or opportunity to cure the missing Medical Certification Form. *See* Stanish
23  Opp. Dep. at 47:6–49:2 Stanish acknowledged that LINA never told Capili that she could be
24  terminated for failing to remit the Medical Certification Form. *Id.* Instead, LINA's letters merely
25  informed Capili that there could be employment consequences, and advised her to speak with
26  Defendant's HR help desk.

27        Based on these disputed factual issues, and taking all inferences in Plaintiff's favor, the
28  Court concludes that a jury could find that Defendant, not Plaintiff, was responsible for a

breakdown in the interactive process. Summary judgment is therefore inappropriate on this claim.[3] The Court need not, and does not, offer any opinion as to whether Plaintiff's claim would likely be persuasive to a jury at trial.

### C. Plaintiff's Fifth, Sixth, and Seventh Claims for Failure to Provide Leave and Reasonable Accommodation

Under FEHA, an employer has a duty to reasonably accommodate an employee's physical disability. *Cuiellette*, 123 Cal. Rptr. 3d at 569. "The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Id.* To prevail on summary judgment, an employer must establish through undisputed facts that "(1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." *Jensen v. Wells Fargo Bank*, 102 Cal. Rptr. 2d 55, 68 (Ct. App. 2000).

Defendant argues that its efforts to accommodate Capili were reasonable because (1) it effectively granted her two months of leave, and would have provided additional leave if Capili returned the Medical Certification Form authorizing that leave; (2) Capili effectively asserted through her leave request that she "could not perform any work whatsoever, whether with or without an accommodation"; and (3) Defendant is not obliged to provide leave as an accommodation when an employee fails to return medical documentation authorizing that leave. Mot. at 20–21.

Defendant's accommodation theory fails for the same reasons that its interactive process

---

[3] Because the Court finds that triable issues preclude summary judgment on this claim, the Court does not address whether Defendant's non-FMLA leave policy violates FEHA as a matter of law. *See* Opp. at 19. Even if the Court were to consider this argument, Plaintiff fails to cite any case law that supports her proposition. *See id.*; Reply at 9–12.

16

arguments are inadequate. The above discussed evidence, when all reasonable inferences are taken in Capili's favor, suggests that a reasonable jury could find that Capili may not have "refuse[d]" Defendant's offered accommodation, and that Defendant stopped short of doing "everything in its power" to accommodate Capili (including, for instance, by allowing her to remit the paperwork after her return to work, or by holding open Capili's job). *See Jensen*, 102 Cal. Rptr. 2d at 68; Opp. at 20–21. Summary judgment is also inappropriate for the reasons set forth above: that is, a genuine dispute of material fact exists as to whether Defendant failed to engage in good faith in the interactive process. *See id.*

### D. Plaintiff's Eighth Claim for Interference with Plaintiff's Ability to Exercise Rights

Defendant argues that this claim is derivative of Plaintiff's discrimination claims, and fails for the same reasons. *See* Mot. at 21. Defendant does not set forth any independent rationale for granting summary judgment on this claim. Plaintiff's claim, however, pertains to whether Defendant has "interfere[d] with, restrain[ed], or den[ied] the exercise of, or the attempt to exercise any right," including Plaintiff's right to reasonable accommodation. *See* Opp. at 21–22; Cal Gov. Code § 12945(a); 2 Cal. Code Regs. § 11039. Because Plaintiff has shown a triable issue as to whether Defendant provided her with a reasonable accommodation, this claim survives summary judgment.

### E. Plaintiff's Fourth Claim for Failure to Provide Notice

#### i. Legal Standard

Under 2 Cal. Code Regs. § 11049(a), "[a]n employer shall give its employees reasonable advance notice of employees' FEHA rights and obligations regarding pregnancy, childbirth, or related medical conditions" as set forth in that regulation. Section 11048(c)(2) provides that an employer's failure to provide this reasonable notice "shall preclude the employer from taking any adverse action against the employee, including denying reasonable accommodation, transfer or pregnancy disability leave. . . ." Pursuant to Section 11049(d)(1), an employer must keep at its premises a notice presenting information on FEHA's provisions, an employee's rights under the statute, and how to contact and file a complaint with the Department of Fair Employment and Housing. Section 11049(d)(2) mandates that an employer "give an employee a copy of the

17

appropriate notice as soon as practicable after the employee tells the employer of her pregnancy or sooner if the employee inquires about reasonable accommodation, transfer, or pregnancy disability leaves."

### ii. Discussion

Defendant argues that it met its regulatory obligations by repeatedly informing Plaintiff of her rights under the CFRA, FMLA, and California's Pregnancy Disability Leave law. Mot. at 22. Specifically, Defendant stresses that it (1) distributed an employee handbook with information regarding FMLA leave, including pregnancy related leave; (2) made all required notices available at Finish Line cashier stations in Macy's stores; and (3) mailed Plaintiff two separate notices concerning her statutory rights on May 30, 2014 and in June 2014. *Id.* at 21–22.

Despite Defendant's claimed efforts, there is a triable issue as to whether Defendant provided Plaintiff with notice "as soon as practicable" after Plaintiff informed Defendant of her pregnancy on March 3, 2014. Defendant does not dispute that the two notices mailed to Capili were sent some two months after Capili first told Nelson that she was pregnant. *See* Opp. at 14. Defendant fails to show why it was impracticable to inform Plaintiff of her rights on or around that date. In addition, a jury could find that Defendant's employee handbook and related materials are ambiguous as to what statutory leave an employee is entitled to under California law—whether it be FEHA or the California Pregnancy Disability Leave law. *See* Capili MSJ Dep., Exs. 8–9. These documents appear to pertain only to FMLA leave. *See id.* Because Defendant fails to show that it indisputably informed Capili of her rights as required by the regulation, summary judgment is inappropriate on this claim.[4]

### F. Plaintiff's Tenth and Thirteenth Claims for Retaliation

### i. Legal Standard

---

[4] Defendant asserts that there is no private right of action under 2 Cal. Code Regs. § 11049. Defendant, however, presents this argument in one line of its motion, and fails to cite any supportive case law that is specific to this regulation. *See* Mot. at 22. On its face, Section 11049 prohibits an employer from terminating an employee and/or denying her reasonable accommodation where the employer fails to provide reasonable notice as set forth in the regulation. Thus, Defendant fails to establish as a matter of law that Plaintiff cannot assert a claim under this section.

18

"[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, P.3d 1123, 1130 (Ct. App. 2005). California follows the burden shifting analysis of *McDonnell Douglas* when a plaintiff alleges retaliatory employment termination under FEHA "to determine whether there are triable issues of fact for resolution by a jury." *Loggins v. Kaiser Permanente Int'l*, 60 Cal. Rptr. 3d 45, 51 (2007).

### ii. Discussion

Defendant sets forth three primary reasons why summary judgment is appropriate on Plaintiff's tenth and thirteenth claims for retaliation.[5] First, Defendant argues that Plaintiff cannot establish a prima facie case of retaliation because requesting an accommodation was not itself a "protected activity" under FEHA at the time of Plaintiff's termination. Mot. at 23–24. Second, Defendant claims that Plaintiff cannot show discriminatory animus behind Defendant's termination decision. *Id.* Finally, Defendant contends that Capili has not presented substantial evidence showing that the reasons for her termination are pretextual.

Plaintiff cannot make out a prima facie case for retaliation. Plaintiff provides no evidence suggesting that that her termination was causally linked with her pregnancy or disability. Plaintiff asserts only that "Defendant . . . retaliated against [Plaintiff] by firing her [sic] after requesting reasonable accommodation." Opp. at 22. But "a request for accommodation does not constitute protected activity and is insufficient to state a claim for retaliation." *Jaffe v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 217CV03421ODWEX, 2017 WL 3160561, at *3 (C.D. Cal. July 24, 2017) (citing *Nealy v. City of Santa Monica*, 184 Cal. Rptr. 3d 9, 25–26 (Ct. App. 2015) ("[P]rotected activity does not include a mere request for reasonable accommodation. . . . Without more, exercising one's rights under FEHA to request reasonable accommodation or engage in the interactive process does not demonstrate some degree of opposition to or protest of unlawful conduct by the employer.")); *see Rope v. Auto–Chlor System of Washington, Inc.* 163 Cal. Rptr.

---

[5] Defendant argues, and Plaintiff does not dispute, that her thirteenth public policy claim is derivative of her retaliation claim, and therefore fails for the same reasons. Mot. at 23–24.

3d 392 (Ct. App. 2013) (same). Though the California Legislature later amended FEHA to classify an accommodation request as "protected activity," this change does not apply retroactively. *See Jaffe*, 2017 WL 3160561 at *3 ("The 2016 amendment to FEHA does not state that it is retroactive, and Jaffe does not point to any sources indicating that the Court should apply it retroactively."); *Myers v. Philip Morris Companies, Inc.*, 50 P.3d 751, 759 (Cal. 2002) ("California courts comply with the legal principle that unless there is an express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature must have intended a retroactive application." (quotations and alterations omitted and emphasis in original)). Plaintiff does not address this argument in her opposition, and fails to present any case law in support of her retaliation theory.

Even if Plaintiff could state a prima facie case for retaliation, she does not show that Defendant's reasons for terminating her are pretextual or are motivated by animus. *See* Opp. at 22. Defendant presents substantial, undisputed evidence that Defendant terminated Plaintiff because she failed to comply with Defendant's leave policies. *See Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001) (requiring a party opposing summary judgment to present specific and substantial evidence establishing pretext for impermissible retaliation). Because Plaintiff does not meet her burden to show retaliation, summary judgment is appropriate as to Plaintiff's tenth and thirteenth claims.

**IV. CONCLUSION**

As stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

**IT IS SO ORDERED.**

Dated: 5/2/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge